[Cite as *Cotter v. Cotter*, 2011-Ohio-5629.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| --- | --- | --- |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

LETHA COTTER

 Appellant

 v.

WILLIAM M. COTTER

 Appellee

C.A. No. 25656

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. 2008-01-0029

DECISION AND JOURNAL ENTRY

Dated: November 2, 2011

---

BELFANCE, Presiding Judge.

{¶1} Letha Cotter appeals from the trial court's overruling of her objections to the magistrate's decision that found her in contempt. For the reasons set forth below, we reverse.

I.

{¶2} On January 3, 2008, Ms. Cotter filed for divorce from William Cotter. Mr. Cotter had vacated the marital residence on December 31, 2007. At the time he vacated the residence, there was a credit balance on the gas bill. While the matter was pending, on April 7, 2008, the Magistrate approved an agreed temporary entry in which Ms. Cotter agreed to "pay the mortgages, taxes, insurance, and all utilities for the marital residence, her and the child's living expenses, including debt as best able." Although the temporary orders specified that Mr. Cotter was to pay child support and spousal support effective January 3, 2008, the payment of the mortgage and utilities was not made retroactive to that date. As of March 2008, a balance of $898.09 existed on the gas bill. Around this time, Ms. Cotter switched the gas out of Mr.

Cotter's name and began to receive the gas bill in her own name. In the summer of 2008, Mr. Cotter was contacted by a collection agency seeking payment of the outstanding gas bill. Several months later, on October 27, 2008, the trial court issued a decree of divorce, which incorporated the parties' separation agreement.

{¶3} When Ms. Cotter moved from the marital residence because it was being sold, Mr. Cotter filed a show cause motion for contempt against her, alleging that she had failed to pay the outstanding amount on the gas bill as required by the temporary orders and by the decree of divorce.

{¶4} A hearing was held before the magistrate, who determined that, "[p]ursuant to the parties' separation agreement, [Ms. Cotter] was awarded possession of the martial residence pending the sale of the marital residence[ and that,] [i]n accordance with this provision[,] [Mr. Cotter] vacated the marital residence leaving a credit of $454.00 on the gas bill."[1] The magistrate also determined that the separation agreement required Ms. Cotter to pay the mortgage and the utilities for the marital residence and that she had left an unpaid gas bill, which was in Mr. Cotter's name, in the amount of $898.09 when she moved. The Magistrate found Ms. Cotter in contempt for failing to pay the gas bill and awarded judgment to Mr. Cotter in the amount of $898.09 and awarded him $750.00 in attorney fees. The trial court issued a journal entry, incorporating and adopting the magistrate's decision, which was attached to its journal entry, as its order.

{¶5} Ms. Cotter timely objected to the Magistrate's decision. In response to her objections, the trial court found "that the Magistrate did not err or abuse her discretion in

---

[1] We note that the second paragraph of the Magistrate's decision declares, "This motion for contempt has been settled." However, in light of the subsequent finding of contempt, we discern this to be a typographical error.

awarding [Mr. Cotter] a judgment against [Ms. Cotter][.]" It overruled her "Objection" and entered judgment against Ms. Cotter, ordering Ms. Cotter to pay in full within 90 days. Ms. Cotter has appealed, raising two assignments of error for review. For ease of review, we consider her assignments of error together.

## II.

## ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED AS A MATTER OF LAW IN MAKING A FINDING OF CONTEMPT AND ENFORCING TEMPORARY ORDERS WHICH WERE MERGED INTO THE FINAL DECREE WITHOUT ANY RESERVATION IN THE FINAL DECREE OF THE CONTINUING EFFECT OF THE TEMPORARY ORDERS."

## ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED IN THE CONSTRUCTION OF THE DECREE AND ABUSED ITS DISCRETION IN FINDING WIFE IN CONTEMPT BASED UPON THE LANGUAGE OF THE DECREE."

{¶6} Ms. Cotter's first and second assignments of error are two-fold. First, Ms. Cotter states that the trial court erred in finding her in contempt based upon a temporary order that had merged into the final divorce decree. Alternatively, she asserts that she could not be found in contempt based upon the language contained in the divorce decree. Second, she states that the trial court erred in construing the language of the divorce decree so as to find her liable for the utility bill.

{¶7} In her merit brief, Ms. Cotter observes that "[i]t is not clear whether the trial court based its contempt finding on [a] violation of temporary orders or violation of the language of the final Decree." Upon a review of the trial court's judgment entry, we agree that the trial court did not make a finding of contempt and, therefore, that issue is not properly before this Court.

{¶8} "Contempt is the disobedience of a lawful court order." *Boston Hts. v. Cerny*, 9th Dist. No. 23331, 2007-Ohio-2886, at ¶19, citing *Windham Bank v. Tomaszczyk* (1971), 27 Ohio

St.2d 55, paragraph one of the syllabus. "Contempt of court consists of both a finding of contempt and the imposition of a penalty or sanction." *Noll v. Noll*, 9th Dist. Nos. 01CA007932, 01CA007976, 2002-Ohio-4154, at ¶13, citing *Cooper v. Cooper* (1984), 14 Ohio App.3d 327, 328. "A finding of contempt is the first part of the punishment; the trial court must also impose a sanction." *Cerny* at ¶22. See, also, *Chain Bike Corp. v. Spoke 'N Wheel, Inc.* (1979), 64 Ohio App.2d 62, at syllabus (holding that "[i]n order for there to be a final order in contempt of court proceedings, there must be both a finding of contempt and imposition of a sanction or penalty * * *" and "[t]he mere adjudication of contempt of court is not a final order until a sanction or penalty is also imposed").

{¶9} As reflected in the trial court's judgment, the trial court did not make an express finding of contempt. Further, the trial court did not characterize the matter before it as involving a determination of contempt, rather in its judgment entry, stated that "[t]he issue before the Magistrate was which party was responsible for the debt of $898.09." The trial court thereafter determined that Ms. Cotter was responsible for the debt in light of its equity jurisdiction rather than identifying any failure on the part of Ms. Cotter to obey a court order. Accordingly, because we find that the trial court never made a finding of contempt, this aspect of Ms. Cotter's assignments of error is not properly before us.

{¶10} Ms. Cotter further argues that the trial court erred in its construction of the divorce decree given that the divorce decree made no provision requiring her to pay the utility bill. The parties do not dispute that, pursuant to the temporary order entered April 7, 2008, Ms. Cotter was required to pay the utilities. In a domestic relations action, interlocutory orders are merged within the final decree, and the right to enforce an interlocutory order does not extend beyond the decree, unless the interlocutory obligation has been reduced to a separate judgment or

has been specifically referred to in the decree. *Colom v. Colom* (1979), 58 Ohio St.2d 245, syllabus. The divorce decree incorporated the parties' separation agreement. The separation agreement provided that it was "to be [a] full settlement of each and all of their respective present and future claims" against one another. The agreement contained no reference to any outstanding amount owed by Ms. Cotter on the gas bill. Mr. Cotter and Ms. Cotter, in a heavily edited sentence initialed by both of them, agreed that, "effective November 1, 2008[, Ms. Cotter] shall have sole possession of [the marital residence] and shall be solely liable for the first mortgage[] and the utilities[.]" Furthermore, they agreed that:

> "[e]ach party shall pay all debts incurred in [his or her] own individual name and shall indemnify and hold the other harmless for the same[, and] * * * [each] warrant[ed] to the other that [he or she] ha[d] not incurred any debt on the credit of the other, excepting the aforementioned joint debts."

{¶11} They also released each other "from all actions, causes of action, suits, claims of any kind * * * in law or in equity which each party may now have or claim to have arising out of or growing out of said marital relationship[.]" The record reflects that Mr. Cotter was aware of the outstanding bill and that it was on his mind on the day of trial. Ms. Cotter contended that Mr. Cotter's decision not to pursue arrearages at the time of the final divorce proceedings was purposeful and part of the parties' ultimate negotiations. At the hearing, Ms. Cotter asserted that Mr. Cotter was aware of the outstanding bill and that he did not pursue any arrearages because he was substantially in arrears on his child support. By contrast, Mr. Cotter argued that, although he was aware of the outstanding gas bill on the day the couple finalized their divorce, he believed that Ms. Cotter was supposed to use his portion of the federal stimulus check, which came to $750, to pay off the gas bill. He also argued that he had challenged the child support arrearages on the basis that he had paid other bills, such as the mortgage on the marital home.

{¶12} Notwithstanding the parties' varied characterizations of their negotiations, the divorce decree makes Ms. Cotter responsible for the utilities after November 1, 2008, but it does not mention any obligation to pay outstanding utility bills in Mr. Cotter's name. The decree and the separation agreement originally contained a provision stating that spousal support and child support arrearages would not merge with the decree. However, those provisions were excised and initialed by the parties. Furthermore, the gas bill at issue was in Mr. Cotter's name, and, as reflected in the separation agreement, he expressly waived all claims "in law or in equity" against Ms. Cotter. Mr. Cotter never had any outstanding amount of the gas bill reduced to a separate judgment nor is the gas bill specifically mentioned in the decree. Therefore, as the divorce decree issued by the trial court on October 27, 2008, merged any temporary orders and terminated any continuing rights acquired within them, and because the decree itself made no provision for Ms. Cotter's payment of the outstanding utilities prior to November 1, 2008, the parties' decree could not form the basis of the judgment against Ms. Cotter.

{¶13} Notwithstanding, the trial court determined that:

"[e]quity demands that[,] since [Ms. Cotter] accrued the benefit of the * * * credit, * * * she must likewise absorb the debt for the gas she used while living at the marital residence for that same period[.] * * * Accordingly, even though as between Dominion and [Mr. Cotter,] he is legally liable for the debt, equity demands that [Ms. Cotter] indemnify and hold him harmless for the debt incurred solely by her."

{¶14} Thus, the trial court appears to have entered a judgment in equity against Ms. Cotter. Although the trial court's impulse to reach an equitable result is understandable, in determining who was responsible for the outstanding utilities the trial court was limited to interpreting and applying the parties' decree. It could not create a new obligation in contravention to the parties' final decree of divorce. Likewise, that trial court's judgment entry calls into question its award of attorneys fees. See *Wilborn v. Bank One Corp.*, 121 Ohio St.3d

546, 2009-Ohio-306, at ¶7. ("Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation.")

{¶15} For the foregoing reasons, we sustain Ms. Cotter's first and second assignments of error in part and find that the trial court, in evaluating who was responsible for the utility bill, was limited to construing and applying the terms of the decree of divorce.

{¶16} Ms. Cotter's assignments of error are sustained in part.

### III.

{¶17} The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is reversed.

Judgment reversed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR

APPEARANCES:

SHARYL W. GINTHER and KENNETH L. GIBSON, Attorneys at Law, for Appellant.

CHRISTINE D. FINAN, Attorney at Law, for Appellee.